51 So.3d 1119 (2010)
Ex parte Robert Shawn INGRAM
(In re Robert Shawn Ingram v. State of Alabama).
1060413.
Supreme Court of Alabama.
March 19, 2010.
*1120 Richard Jaffe, Birmingham; and John H. Blume and Sheri Lynn Johnson, Cornell Law School, Ithaca, New York, for petitioner.
Troy King, atty. gen., and Beth Jackson Hughes, asst. atty. gen., for respondent.
PER CURIAM.
Robert Shawn Ingram petitioned this Court for a writ of certiorari to review *1121 whether the Court of Criminal Appeals erred in affirming the order issued by the Talladega Circuit Court summarily denying his Rule 32, Ala. R.Crim. P., petition. We issued the writ of certiorari to review whether the order issued by the trial court represents the actual findings and conclusions of that court.

I. Facts and Procedural History
In 1995, Ingram was convicted of participating in the murder of Gregory Huguley during the course of a kidnapping, an offense made capital by Ala.Code 1975, § 13A-5-40(a)(1). The jury recommended that Ingram be sentenced to death. The trial judge was Judge Jerry L. Fielding; following a separate sentencing hearing, Judge Fielding sentenced Ingram to death. Ingram's conviction and sentence were affirmed on direct appeal. Ingram v. State, 779 So.2d 1225 (Ala.Crim.App.1999) ("Ingram I"), aff'd, 779 So.2d 1283 (Ala. 2000), cert. denied, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001). The Court of Criminal Appeals issued a certificate of judgment on September 26, 2000.
On February 1, 2002, Ingram filed a Rule 32, Ala. R.Crim. P., petition. In March 2002, the State filed a response to Ingram's petition and a motion for a partial summary dismissal. In April 2002, Ingram filed a response to the State's motion for a partial summary dismissal, a motion to proceed ex parte on a request for funds for expert assistance, and an amended Rule 32 petition, which also requested full discovery and funds for experts. In July 2002, the State filed responses to Ingram's motions and his amended Rule 32 petition.
On May 20, 2004, the State filed a proposed order denying Ingram's Rule 32 petition. Ingram did not file a response to the State's proposed order. Judge Fielding, who had presided over Ingram's capital-murder trial in 1995, retired while the Rule 32 proceedings were pending, and the case was assigned to Judge William E. Hollingsworth.
On June 8, 2004, Judge Hollingsworth issued an order denying Ingram's Rule 32 petition ("the June 8 order"). It is undisputed that the order constituted a verbatim adoption of the proposed order filed by the State on May 20, 2004, the only modifications being that the heading stated "Order" as opposed to "Proposed Order" and the signature page contained Judge Hollingsworth's signature rather than Judge Fielding's. Judge Hollingsworth did not hold a hearing or a status conference on Ingram's petition and motions, and he did not in the June 8 order explicitly address Ingram's pending motions.
On July 16, 2004, Ingram filed an untimely motion to reconsider the June 8 order and a timely notice of appeal. On July 21, 2004, Judge Hollingsworth issued an order ("the July 21 order") in which he purported to rescind the June 8 order and to grant Ingram's motion seeking to have Judge Hollingsworth recuse himself from further involvement in the case. The July 21 order stated, in pertinent part:
"For cause shown, it is therefore ORDERED that the Court's Order dated June 8, 2004 dismissing the Defendant's first amended Rule 32 Petition is hereby vacated, set aside and held for naught.
"Further, the undersigned does hereby recuse himself from further matters in this case."
By order dated September 7, 2004, the Court of Criminal Appeals directed the trial court
"to set aside its July 21, 2004, order because the motion to reconsider was untimely and because the circuit court retained jurisdiction to modify its June 8, 2004, order for only 30 days after the order was issued. See Ex parte Bishop, 883 So.2d 262 (Ala.Crim.App.2003)."
*1122 The Court of Criminal Appeals subsequently affirmed Judge Hollingsworth's summary denial of Ingram's Rule 32 petition. See Ingram v. State, 51 So.3d 1094 (Ala.Crim.App.2006) ("Ingram II").
Ingram petitioned this Court for a writ of certiorari claiming several grounds on which certiorari review should be granted. This Court granted Ingram's petition on the issue whether the June 8 order represents the actual findings and conclusions of the trial court.

II. Standard of Review
"`This Court reviews pure questions of law in criminal cases de novo.'" Ex parte Morrow, 915 So.2d 539, 541 (Ala. 2004) (quoting Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)).

III. Analysis
It is axiomatic that an order granting or denying relief under Rule 32, Ala. R.Crim. P., must be an order of the trial court. It must be a manifestation of the findings and conclusions of the court. Although no authority other than the creation of the judicial branch and the delegation of judicial authority to the circuit courts of this State in the Alabama Constitution, Ala. Const.1901, Amend. No. 328, § 6.01(a) (now § 139(a), Ala. Const. 1901 (Off.Recomp.)), is necessary to support this proposition, the provisions of Rules 32.1 through 32.10, Ala. R.Crim. P., also provide support. Among other things, Rule 32.7(d) states that "[if] the court determines" certain matters to be true, it may summarily dismiss the petition; Rule 32.9(c) provides that "[i]f the court finds in favor of the petitioner, it shall enter an appropriate order"; Rule 32.9(d) states that "[t]he court shall make specific findings of fact relating to each material issue of fact presented"; and Rule 32.10 refers to "the decision of a circuit court."
Ingram begins his argument to this Court as follows:
"The Supreme Court of the United States has `criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties,' Anderson v. City of Bessemer, 470 U.S. 564, 572 (1985), and Alabama appellate courts have warned against the wholesale adoption of proposed findings of fact or conclusions of law. See Weeks v. State, 568 So.2d 864, 865 (Ala.Crim.App. 1989) (`[W]e issue a caution that courts should be reluctant to adopt verbatim the findings of fact and conclusions of law prepared by the prevailing party'); see also Dobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000) (`the practice of adopting the state's proposed findings and conclusions is subject to criticism')."
Ingram then quotes Williams v. State, 627 So.2d 985, 993 (Ala.Crim.App.1991), for the proposition that a wholesale adoption of a draft order prepared by the State in a capital case "gives rise to a legal issue of whether the findings and conclusions are in fact those of the court."
Although there may be merit in Ingram's argument, the general rule is that, where a trial court does in fact adopt the proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court. In Dobyne v. State, 805 So.2d 733, 741 (Ala. Crim.App.2000), the Court of Criminal Appeals stated:
"`"While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."'"
805 So.2d at 741 (quoting other cases; emphasis added). In McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003), the Court of Criminal Appeals stated that "even when a trial court adopts verbatim a *1123 party's proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous." Cf. United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (expressing disapproval of the "mechanical" adoption of findings of fact prepared by a party, but stating that such findings are formally those of the trial judge and "are not to be rejected out-of-hand").
In this unusual case, however, we cannot conclude that the above-stated "general rule" is applicable. That is, despite the fact that the trial judge signed the June 8 order, we cannot conclude that the findings and conclusions in that order are in fact those of the court itself.
The June 8 order begins as follows:
"Having considered the first amended Rule 32 petition presented to the Court, the State of Alabama's amended answer, the State of Alabama's motions to dismiss, the evidence presented at trial, and the events within the personal knowledge of the Court, the Court makes the following findings of fact and conclusions of law and summarily dismisses and denies the claims in Ingram's first amended Rule 32 petition."
(Emphasis added.) After a rendition of the facts of the case, the June 8 order states:
"The findings by the Court of Criminal Appeals [in Ingram I] guide the Court in its resolution of the issues presented in the first amended Rule 32 petition. The Court is also relying on the trial transcript where necessary to support the Court's findings and the resolution of this Rule 32 petition. In addition, this Court presided over Ingram's capital murder trial and personally observed the performance of both lawyers throughout Ingram's trial and sentencing."
(Emphasis added.)
The obvious problem with the emphasized portions of the above-quoted passages from the June 8 order is that Judge Fielding, not Judge Hollingsworth, presided over Ingram's capital-murder trial. Although minor factual errors understandably find their way into orders drafted by trial courts in handling busy dockets, an error as to whether the judge in fact sat as the trial judge in a capital-murder trial and is basing his decision on personal observations and personal knowledge acquired by doing so is the most material and obvious of errors.
Ingram contends that the nature of these errors indicates that the trial judge did not even read the proposed order submitted by the State before signing and issuing it as the order of the court and that the June 8 order cannot represent the actual and independent findings of the trial court. Ingram further contends that Judge Hollingsworth's attempt in the July 21 order to rescind the June 8 order and to recuse himself from the case confirms that Judge Hollingsworth recognized that the June 8 order was fatally flawed.
Despite the erroneous statements in the June 8 order, the Court of Criminal Appeals affirmed the judgment of the trial court in summarily dismissing Ingram's Rule 32 petition based upon the standard of review an appellate court employs in evaluating findings of fact and conclusions of law even when those findings and conclusions are adopted verbatim from the prevailing party. The Court of Criminal Appeals quoted the following passage from Dobyne:
"`"`While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the *1124 court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala. Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Crim.App.1989), cert. denied, [498] U.S. [882], 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Crim. App.[1989]), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'
"`"Bell v. State, 593 So.2d 123, 126 (Ala. Crim.App.1991), cert. denied, 593 So.2d 123 (Ala.), cert. denied, 504 U.S. 991, 112 S.Ct. 2981, 119 L.Ed.2d 599 (1992)."'"
Ingram II, 51 So.3d at 1100 (quoting Dobyne, 805 So.2d at 741, quoting in turn Jones v. State, 753 So.2d 1174, 1180 (Ala. Crim.App.1999)). The Court of Criminal Appeals concluded that "the facts and conclusions of law in the circuit court's [June 8] order were not clearly erroneous" and that therefore the trial court's judgment was due to be affirmed. Ingram II, 51 So.3d at 1100.
The State echoes the reasoning of the Court of Criminal Appeals, noting that Ingram failed to explain specifically how any of the trial court's findings and conclusions were clearly erroneous. The State further contends that the erroneous statements in the trial court's June 8 order are harmless because, it argues, the specific findings in the order as to Ingram's claims were not based upon the trial judge's personal knowledge. "Instead, Judge Hollingsworth denied the individual claims in the Rule 32 petition based on his finding that the claims were not sufficiently pleaded, were not supported by the trial transcript, were decided adversely to Ingram on direct appeal, or were procedurally defaulted."[1]
Though the "clearly erroneous" standard of review may apply in cases in which the trial court has adopted, as its own, the proposed order of the prevailing party, the analysis proffered by both the Court of Criminal Appeals and the State fails to admit of the most fundamental and the first requirement: that the order and the findings and conclusions in such order are in fact those of the trial court.
In her dissent to the opinion of the Court of Criminal Appeals in Ingram II, then Judge Cobb took note of the "disturbing elements in the procedural history of the case and in the order itself." 51 So.3d at 1117 Indeed, the very reason that "the practice of adopting the state's proposed findings and conclusions is subject to criticism," Dobyne, 805 So.2d at 741, is because "there is an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court." Prowell v. State, 741 N.E.2d 704, 709 (Ind.2001).
Accordingly, appellate courts must be careful to evaluate a claim that a prepared order drafted by the prevailing party and adopted by the trial court verbatim does not reflect the independent and impartial findings and conclusions of the trial court. In Bell v. State, 593 So.2d 123 (Ala.Crim.App.1991)  the case the Court of Criminal Appeals quoted in Ingram II for the "clearly erroneous" standard of review  the Court of Criminal Appeals observed:
"The trial court did adopt verbatim the proposed order tendered by the state; however, from our review of the record, *1125 we are convinced that the findings and conclusions are those of the trial court. The record reflects that the trial court was thoroughly familiar with the case and gave the appellant considerable leeway in presenting evidence to support his claims."
Bell, 593 So.2d at 126 (emphasis added). The undisputed facts in the present case obviously prevent a similar conclusion here.
We are forced by the nature of the errors present in the June 8 order to reverse the judgment of the Court of Criminal Appeals. In the simplest terms, the patently erroneous nature of the statements regarding the trial judge's "personal knowledge" and observations of Ingram's capital-murder trial undermines any confidence that the trial judge's findings of fact and conclusions of law are the product of the trial judge's independent judgment and that the June 8 order reflects the findings and conclusions of that court.
We reverse the judgment of the Court of Criminal Appeals affirming the June 8 order, and we remand this case for that court, in turn, to remand it to the trial court to consider Ingram's pending motions and his Rule 32 petition.[2]
REVERSED AND REMANDED.
WOODALL, STUART, SMITH, and PARKER, JJ., concur.
BOLIN and MURDOCK, JJ., concur specially.
LYONS, J., concurs in the result.
COBB, C.J., and SHAW, J.,[3] recuse themselves.
MURDOCK, Justice (concurring specially).
The Court's decision today is not based on Judge Hollingsworth's July 21 order in which he purported, in an untimely manner, to rescind the June 8 order and to recuse himself from the case. I believe that, under the particular circumstances of this case, the fact that Judge Hollingsworth attempted, albeit unsuccessfully, to rescind the June 8 order provides additional confirmation of the soundness of this Court's conclusion that the June 8 order did not represent the independent judgment of the trial court.
BOLIN, J., concurs.
LYONS, Justice (concurring in the result).
We are presented here with a question of first impression: Whether we will tolerate the entry by a trial court of an order prepared by the prevailing party when it is evident from the face of the order that the trial court could not have carefully read the proposed order before entering it. I consider this to be a question of first impression because my research does not, thankfully, disclose a previous similar circumstance.
In Dobyne v. State, 805 So.2d 733, 742 (Ala.Crim.App.2000), relied upon by the Court of Criminal Appeals for the proposition that the "clearly erroneous" standard of review applies to orders proposed by one of the parties and adopted by the trial court, the court stated:
"Moreover, as previously noted, the circuit judge who presided over this Rule 32[, Ala. R.Crim. P.,] proceeding also presided over Dobyne's trial; the *1126 circuit judge was thoroughly familiar with the case. After reviewing the record in this case, we find that the circuit court's order denying Dobyne's postconviction relief represents the circuit court's independent judgment and its considered conclusions. Therefore, we conclude that the circuit court did not commit reversible error by adopting the order drafted by the state."
(Emphasis added.) Dobyne does not deal with a proposed order that inaccurately describes the trial judge's role in the former proceeding.
The evidence before us of the trial judge's failure to read the proposed order in this proceeding is conclusive. The order recites facts the trial judge would have had to know were incorrect  that he presided over the trial and had personal knowledge of the performance of counsel, when he did not. Under the circumstances, we have irrefutable evidence that the findings contained in the order are not those of the court, thereby distinguishing Dobyne. The answer to the above-stated question of first impression we address today must be a resounding "No!"
NOTES
[1] If the trial judge's personal knowledge was, in fact, superfluous to the findings of fact and conclusions of law, then one wonders why the State included these statements in its proposed order in the first place.
[2] It is our understanding that this case was reassigned to Judge Fielding, as a supernumerary circuit judge, when Judge Hollingsworth recused himself.
[3] Justice Shaw was a member of the Court of Criminal Appeals when that court considered this case.